**GEN–PROBE INCORPORATED,**
a Delaware corporation,
Plaintiff,

v.

**CENTER FOR NEUROLOGIC STUDY, a not for profit corporation, and La Jolla Cancer Research Center, a not for profit California corporation, Defendants.**

**CENTER FOR NEUROLOGIC STUDY,** a California nonprofit corporation, Counterclaimant,

v.

**David E. KOHNE, Ph.D., a California citizen, and Gen–Probe Incorporated, a Delaware corporation, and Does 1–10, inclusive, Counterdefendant.**

No. CV 93–1284 H (BTM).

United States District Court,
S.D. California.

Nov. 12, 1993.

---

William F. Sullivan, Brobeck, Phleger & Harrison, San Diego, CA and Douglas E. Olson, Lyon & Lyon, La Jolla, CA, for plaintiff and counterdefendant Gen–Probe Inc.

Mauricio A. Flores, San Diego, CA, for defendant and counterclaimant CNS.

ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM; GRANTING DEFENDANT 30 DAYS LEAVE TO FILE AN AMENDED COUNTERCLAIM

HUFF, District Judge.

## I. INTRODUCTION

Plaintiff and Counter–Defendant Gen–Probe Incorporated ("Gen–Probe") and Counter–Defendant David E. Kohne (collectively "Plaintiffs") move the court to dismiss the counterclaim of Defendant Center for Neurologic Study ("CNS") pursuant to Federal Rule of Civil Procedure 12(b)(6), or, alternatively, for a more definite statement pursuant to Federal Rules of Civil Procedure 12(e) and 9(f). The court has considered the matter and argument of the parties. For the following reasons, the court grants Plaintiffs' motion to dismiss Defendant's counterclaim. However, the court grants Defendant 30 days leave to file an amended counterclaim.

## II. DISCUSSION

A. *Rule 12(b)(6) Dismissal*

Plaintiffs move the court to dismiss Defendant's counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

1. *Standard*

A 12(b)(6) dismissal is proper only in "extraordinary" cases. *United States v.*

*Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990). The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1483 (9th Cir. 1991). Finally, courts must construe the complaint in the light most favorable to the plaintiff. *Russell v. Landrieu,* 621 F.2d 1037, 1039 (9th Cir.1980). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

## 2. *Application of Standard*

Defendant alleges three causes of action in its counterclaim: (1) constructive trust based on 35 U.S.C. § 200, *et seq.;* (2) breach of written contract; and (3) declaratory judgment. The court must determine whether each states a cognizable legal theory and alleges sufficient facts to support the theory.

### a. *Constructive Trust*

Defendant first alleges a "constructive trust" cause of action based on 35 U.S.C. § 202. That section reads in relevant part:

(a) Each nonprofit organization or small business firm may, within a reasonable time after disclosure as required by paragraph (c)(1) of this section, elect to retain title to any subject invention....

(c)(1) That the contractor disclose each subject invention to the Federal agency within a reasonable time after it becomes known to contractor personnel responsible for the administration of patent matters, and that the Federal Government may receive title to any subject invention not disclosed to it within such time.

35 U.S.C. § 202 (1988).

Defendant alleges that the inventions disclosed in the '330 Patent are "subject inventions" within the meaning of Sections 201(e) and 202(a) because Dr. Kohne "conceived" or "reduced to practice" the inventions while working under funding agreements with federal government agencies. Defendant further alleges that on August 30, 1993, Defendant disclosed the inventions to the agencies, and in so doing, exercised its election rights under Section 202(a) to take title. On those grounds, Defendant alleges that it is entitled to "a constructive trust over the trust res which consists of (1) the inventions disclosed in the '330 patent and all revenue derived therefrom and (2) the '330 patent itself and all revenues derived therefrom." Counterclaim, ¶ 27.

■ Plaintiffs, however, challenge Defendant's standing to enforce Section 202. "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute...." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Id.* Plaintiffs argue that Defendant lacks standing to enforce Section 202 because the statute provides for no private right of action. The court agrees and therefore, must dismiss Defendant's cause of action for failure to state a claim.

On its face, Chapter 18 of Title 35 lacks any mechanism for private enforcement of Section 202. As such, any private right of action must be implied. The principles the court must apply in this situation are well-settled. "Whether a private right of action should be implied is a matter of statutory construction; the ultimate question is simply whether Congress intended to create a private remedy." *Rapid Transit Advocates v. S.Cal. Rapid Transit,* 752 F.2d 373, 376 (9th Cir.1985) (citations omitted). In the present case, the relevant statutes prescribe no private right of action. Moreover, the legislative history fails to demonstrate an intent to create a private right of action. *See* H.R.Rep. No. 1307, 96th Cong., 2d Sess., pt. 1, (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 6460. In such cases, "[t]he question whether Congress ... intended to create a private right of action, has definitely been answered in the negative." *Rapid Transit Advocates,* 752 F.2d at 377 (quoting

*Touche Ross & Co. v. Redington,* 442 U.S. 560, 576, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979)).

The court is further persuaded by the decision in *Platzer v. Sloan–Kettering Institute,* 787 F.Supp. 360 (S.D.N.Y.1992). In *Platzer,* the district court concluded that no private right of action existed under Section 202. In doing so, the court observed that:

> This conclusion is supported by the fact that elsewhere in the patent statutes, Congress did explicitly grant private causes of action. *See, e.g.,* 35 U.S.C. § 281 (1988) (a "patentee shall have remedy by civil action for infringement of his patent"); 35 U.S.C. §§ 141–145 (1988) (applicant whose patent is rejected by the Patent Office on appeal may pursue his claim in the federal courts). The fact that elsewhere in the patent statutes private rights were expressly provided indicates that "when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *Touche Ross,* 442 U.S. at 573, 99 S.Ct. at 2487. Likewise, that such a right was not created under § 202(c)(7)(B) suggests that no right was intended

*Platzer v. Sloan–Kettering Institute,* 787 F.Supp. at 365.

In short, no court has concluded that a private right of action exists under Section 202. In fact, every court that has considered the issue has reached the opposite conclusion. *See, e.g., Southern Research Institute v. Griffin Corp.,* 938 F.2d 1249, 1254 (11th Cir.1991) ("Sections 202(a) and (e) do not establish an entitlement to patent"); *Ciba–Geigy Corp. v. Alza Corp.,* 804 F.Supp. 614, 629 (D.N.J.1992) ("no private right of action exists under §§ 200–204"); *Platzer v. Sloan–Kettering Institute, supra.* In light of that persuasive authority and the court's own analysis, the court declines to recognize a private right of action under Section 202. Accordingly, the court dismisses Defendant's cause of action pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### b. *Breach of Written Contract*

Defendant also alleges a breach of written contract cause of action. Defendant alleges that during the period Dr. Kohne was affiliated with Defendant and La Jolla Cancer Research Foundation (collectively "Defendants"), he received funds pursuant to a funding contract (the "Contract") and two grant agreements (the "Grants") with federal funding agencies. Defendant alleges that all three agreements contain, either expressly or implicitly, a requirement that "any invention first conceived or actually reduced to practice in the course of the performance of the Contract shall be promptly and fully reported to the funding Government agency." *See* 45 C.F.R. § 8.6. Finally, Defendant alleges that—because of the agreements—Dr. Kohne owed a contractual duty to disclose any inventions which he conceived or reduced to practice while working for Defendants to both the federal funding agencies and to Defendants. *See* Counterclaim, ¶¶ 31, 32.

■ As an initial matter, whether Dr. Kohne owed a contractual duty to the federal funding agencies is irrelevant. Defendant fails to demonstrate either standing to assert the claims of those agencies directly or as a third party beneficiary. Rather, to withstand Plaintiffs' motion to dismiss, Defendant's complaint must allege facts sufficient to demonstrate that Dr. Kohne owed a duty to Defendants. Moreover, because of the nature of Defendant's cause of action, that duty must arise from a written contract.

In short, Defendant alleges that Defendants entered into the Contract and Grants with the federal funding agencies in exchange for, *inter alia,* Kohne's promise to disclose any inventions which he discovered as a result. Defendant further alleges that Dr. Kohne's failure to do so constituted a breach of the same Contract and Grants. Even construed in their most favorable light, those allegations fail to support Defendant's breach of written contract claim.

First and most importantly, Dr. Kohne was simply not a party to the agreements at issue. The allegations of the counterclaim make clear that those agreements were between the funding agencies and Defendants only. *See* Counterclaim, ¶¶ 10, 11, 13, 14. The agreements themselves, attached as exhibits to the counterclaim, clearly label Defendants as the "grantee institutions." *See*

Counterclaim, Exhibits A & B. As such, Defendants, not Dr. Kohne, by accepting the grants, agreed to certain "terms of acceptance" set forth therein. *See id.* While Dr. Kohne is listed as the "Principal Investigator", the agreements do not purport to bind him as a contracting party and his signature appears nowhere on their face.

In essence, Defendant's cause of action appears to confuse the role of Defendants—grantee/contractors and promisors under each of the relevant agreements—and that of Dr. Kohne, simply Defendants' employee. That distinction is amply illustrated by the implementing regulations at 37 C.F.R. § 401.14(f)(2), which provide that, "the contractor agrees to require, by written agreement, its employees, other than clerical and nontechnical employees, to disclose promptly in writing to personnel identified as responsible for the administration of patent matters. . . ." If Dr. Kohne, and employees like him, were automatically parties to federal funding agreements, that requirement would be superfluous.

In sum, Dr. Kohne was a party to neither the Contract nor the Grants. As such, Defendant states no cognizable legal claim by alleging that Dr. Kohne breached those agreements. The decision of *Amen v. Merced County Title Co.*, 58 Cal.2d 528, 25 Cal.Rptr. 65, 375 P.2d 33 (1962), heavily relied upon by Defendant, does not purport to hold otherwise. The court acknowledges that Defendant would still state a claim for relief if its counterclaim alleged the existence of *any* written agreement between Dr. Kohne and Defendants which created a contractual duty or governed ownership rights. However, while Defendant generally alleges that Dr. Kohne promised to disclose inventions to Defendants, its counterclaim fails to allege the existence of a written contract which provides as much. Therefore, the court must dismiss Defendant's breach of written contract cause of action pursuant to Rule 12(b)(6) for failure to allege sufficient facts to support its legal claim.

#### c. *Declaratory Judgment*

Plaintiff, bringing its own declaratory judgment suit, does not challenge Defendant's declaratory judgment cause of action.

### III. CONCLUSION

The court dismisses Defendant's Section 202 constructive trust action with prejudice because Defendant lacks standing to enforce Section 202. The court, however, dismisses Defendant's breach of written contract cause of action without prejudice because Defendant may be able to allege sufficient facts to support that claim in an amended complaint. Accordingly, the court grants Defendant 30 days leave to amend its counterclaim to allege its claims in a proper fashion.

IT IS SO ORDERED.