[Civ. No. 48211. Second Dist., Div. Two. Aug. 17, 1976.]

FARR & STONE INSURANCE BROKERS, INC.,
Plaintiff and Respondent, v.
GUS LOPEZ, Defendant and Appellant.

COUNSEL

Jerry L. Kay for Defendant and Appellant.

Hahn & Hahn and Clark R. Byam for Plaintiff and Respondent.

OPINION

FLEMING, J.—Defendant Gus Lopez appeals the judgment for $5,899 plus interest and costs in favor of plaintiff Farr & Stone Insurance Brokers, Inc. in an action for insurance premiums. The trial court heard the cause without a jury and found that Lopez promised to pay past-due insurance premiums owed by Apex Auto Products Company to Farr & Stone and that his promise was an original obligation supported by valid consideration. Lopez contends the evidence shows no promise to pay the premiums, and, if there was a promise, it lacked consideration.

The evidence, which must be viewed in a light most favorable to the judgment (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]), shows that from 1969 to 1973 Farr & Stone provided comprehensive business and workmen's compensation insurance to Apex. In 1973 Apex fell into financial difficulties and behind on premium payments. Farr & Stone advanced $6,099.03 to insurance carriers on behalf of Apex.

In January 1974 Lopez's children assumed management of Apex on the promise that they would share in the ownership of the company. To help his children, Lopez agreed to assist Apex with its financial problems. As Lopez testified, "If we got the company out of a mess, then everybody would benefit." Apex sent a letter to its creditors, including Farr & Stone, which stated that the Lopez children were new Apex officers and Lopez was "elected chairman of the board."

In March 1974, Lopez and his daughter Carolyn met with Lawrence Stone and Michael Poland of Farr & Stone to discuss Apex's insurance obligations. Stone explained that quick agreement was required because if the insurance policies were immediately cancelled Farr & Stone could obtain substantial rebates on prepaid premiums advanced on behalf of Apex. It was agreed that Apex would pay $500 monthly on past-due

premiums and pay all future premiums when due. Stone testified that Lopez promised if Apex could not pay the premiums he would pay them out of his own checkbook and that Farr & Stone relied on Lopez's promise in not cancelling the insurance policies. Michael Poland and Carolyn Lopez testified that Lopez said he would personally take care of the premiums. Lopez testified that he said Apex would try to make the payments.

Apex made only one payment of $200 to Farr & Stone; Carolyn Lopez advanced the money from her personal funds. In July 1974 Lopez sent a letter on Apex stationery stating "to whom it may concern" that Lopez and his children were not associated with the management of Apex as officer, shareholder, employee, agent, representative, or in any capacity, and were not responsible for any of its obligations, debts, or accounts payable.

■ Lopez contends this evidence fails to support the finding that he promised Farr & Stone he would pay the insurance premium obligation of Apex. In making this contention Lopez ignores a cardinal rule of appellate review: the appellate court will not reweigh conflicting evidence before the trier of fact. Whatever other witnesses might have testified, Lawrence Stone testified that Lopez promised to pay Apex's premiums out of his own checkbook. That testimony is not inherently improbable or unworthy of belief and therefore constitutes substantial evidence to support the trial court's finding. (*Protopappas* v. *Protopappas,* 213 Cal.App.2d 659, 664 [28 Cal.Rptr. 884].)

■ Lopez contends the statute of frauds bars enforcement of his oral promise. Farr & Stone relies on an exception to the statute in Civil Code section 2794: "A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing: . . . (4) Where the promise is upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation, or from another person . . ." Lopez argues this exception does not apply because there was no consideration beneficial to him in this case because he received nothing of immediate and direct pecuniary benefit. (See *Michael Distributing Co.* v. *Tobin,* 225 Cal.App.2d 655, 665 [37 Cal.Rptr. 518].)

The statute of frauds does not apply. The forebearance of Farr & Stone to cancel Apex's insurance policies was a detriment to Farr & Stone, which passed up the opportunity to obtain rebates on prepaid

premiums, and a benefit to Lopez's children, who had a promised ownership interest in Apex. Lopez, of course, had a direct and personal concern in the welfare óf his children and their economic venture. Moreover, his own business reputation was at stake since he assumed the title of "elected chairman of the board" of Apex and undertook to save the failing company. ■ "It is well settled that whenever the leading and main object of the promisor is not to become surety or guarantor of another but to subserve some purpose or interest of his own, the promise is not within the statute [of frauds] even though performance of the promise may pay the debt or discharge the obligation of another." (*Merritt* v. *J.A. Stafford Co.,* 68 Cal.2d 619, 628 [68 Cal.Rptr. 447, 440 P.2d 927].)

The consideration required for Civil Code section 2794, subdivision (4), usually is, but need not be, pecuniary. In *Schumm* v. *Berg,* 37 Cal.2d 174, 187-188 [231 P.2d 39, 21 A.L.R.2d 1051], for example, part of the consideration was an agreement to name a child after the promisor. The Supreme Court in *Schumm* noted that the important question is whether the promise is only an assumption of another's liability or a new and primary obligation of the promisor. ■ The evidence supports the trial court's finding that Lopez undertook a new and primary obligation in return for the continued support of Farr & Stone.

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.